## THE CONSUMERS' BREWING CO. *v.* HARDWAY ET AL.

*Wills—Proof of contents of destroyed will—Not established by testimony of single witness, when—Validity of tax title to property —Irregularities necessary to defeat title—Mere defect in description will not invalidate title, when.*

1. The contents of a will, which has been destroyed together with the record thereof, can not be established by the testimony of a single witness who speaks entirely from memory after an interval of more than thirty years since he saw the will and heard it read.
2. In order to attack successfully a tax title, the former owner must show some irregularity in the proceedings connected with the tax sale which invalidates the title so conveyed, and where the only defect shown is that the description of the property sold for taxes was not clear, and the present holder and his predecessors in title have been in possession for more than fifty years, it is too late to seek to invalidate the conveyance, and the present holder will be decreed to be invested with an absolute estate in fee simple.

(Decided November 20, 1913.)

ERROR: Court of Appeals for Licking county.

VOORHEES, J.; SHIELDS and POWELL, JJ., concurring.

Action below was a civil action for partition of real estate in the city of Newark, Licking county, Ohio, described as lot number 46 in said city. The petition states in substance that one Steven Gill died in 1843, at which time he was the owner of said lot 46, situated on the north side of the public square in the city of Newark.

He died leaving three daughters and three sons. One of said daughters, Mary Anne Cully, died November 8, 1856, without issue; another daughter,

Sarah Anne Wadhame, died in 1885, leaving one child, a daughter, to-wit, Janet Hartley. It is claimed by the plaintiffs below that Janet Hartley had three children, but what has become of Janet Hartley or her three children is not disclosed. Another of said daughters, to-wit, Eliza M. Kidwell, died November 9, 1909, without issue. Lorenzo Gill, one of said sons, died in 1891, leaving one child, Eliza J. Henthorne; John Gill, another son, died in 1889, leaving Mary V. Hardway, his only child. Steven A. Gill, another of said sons, died in 1912, leaving Mary Francis Gill, his only child.

It is contended by the plaintiffs below that said Steven Gill, who died, as before stated, in 1843, made and left a will whereby he devised to each of his said daughters a life estate in said lot 46 with remainder in fee to their heirs. They further contended that Mary V. Hardway, Eliza J. Henthorne, Steven A. Gill and the unknown heirs of Sarah Anne Wadhame are the heirs of Eliza M. Kidwell, who died November 9, 1909, and as such heirs are each entitled to one undivided one-fortieth of her undivided one-third of the south 120 feet of the west half of the said lot 46, and brought this suit for the partition thereof.

The petition further alleges that The Consumers' Brewing Company was the owner of the other undivided two-thirds of said lot, and is in the sole and exclusive possession of said premises, denying the rights of the plaintiffs and unlawfully keeping the plaintiffs out of possession of their part of said premises. The petition further alleges that the brewing company has received the rents from said premises, amounting to $300 or more.

The defendant, the brewing company, filed its answer, admitting as the first defense that it is in the sole and exclusive possession of said premises, and it denies the rights of the plaintiffs to said premises or any part thereof. It admits the receiving of said rents, amounting to $300 or more, and denies all the other allegations of the petition.

For a second defense defendant alleges that plaintiffs' alleged cause of action did not accrue at any time within twenty-one years prior to the commencement of said action.

For a third defense defendant sets up its adverse, exclusive, open, notorious and continuous possession of said premises for more than twenty-one years.

The plaintiffs' reply in effect is a general denial.

The defendant company filed an amendment to its answer, setting up a claim for improvements under the occupying claimant act.

Upon these issues this case was tried to the court. Neither side demanding or waiving a jury, the hearing resulted in a decree in favor of the plaintiff and ordering partition of the premises. All questions as to the accounting for improvements was reserved by the common pleas for a further order of the court.

From this decree the defendant, The Consumers' Brewing Company, appealed to the circuit court, which court, on motion of plaintiffs below, dismissed the appeal.

From the judgment of the circuit court dismissing said appeal the defendant prosecuted error to the supreme court, which court, by a divided court, three to three, affirmed the circuit court.

The Consumers' Brewing Company also prosecuted error from the decree of the common pleas to this court (then the circuit court), and filed its bill of exceptions and petition in error.

The errors assigned in the petition in error are:

1.   In admitting testimony offered by plaintiffs below against the objection of defendant below.

2.   In rejecting evidence offered by defendant below.

3.   Because the decree, judgment and finding were against the manifest weight of the evidence.

4.   Because said judgment, finding and decree were against the law.

5.   For numerous other errors stated in the petition in error.

Considering the errors in the order assigned, was there error in the admission of testimony by the plaintiffs below? It is contended by the plaintiff in error that the court erred in receiving the testimony of J. F. Lingafelter as to the contents of the alleged will of Steven Gill, deceased, which was made, probated and recorded some forty years ago. But neither the will nor a copy nor any record thereof is produced. It is claimed by the plaintiffs that the original will, as well as the record thereof, was destroyed when the Newark court house was burned in 1874.

There being no record of the will, nor the original will or a certified copy thereof, nor an uncertified copy of the record produced, the only thing left was to produce a witness or witnesses who would testify that they had read the original record and from memory would and could give so much

of its contents as to make it clear and satisfactory
that the will had been probated, and that it con-
tained provisions claimed by the parties offering
such proof.

The plaintiffs produced one J. F. Lingafelter,
who was permitted to testify from memory as to
the contents of the alleged will and the record
thereof, although he had not seen the will or a copy
of it for thirty-six years. Waiving the question as
to the competency of the witness Lingafelter, what
probative force, if any, is his testimony entitled to?
The witness must be supported by other evidence.
The unsupported parol evidence of one person who
testifies that he saw and read a deed in the grantee's
hands is not sufficient to establish a lost deed.
*Smith, Admr.,* v. *Neff et al.,* 5 N. P., 495.

The common pleas and circuit courts, establish-
ing and probating a lost will on the testimony of one
witness as to its contents, were reversed by the su-
preme court of Ohio in the case of *Cole* v. *McClure
et al.,* 88 Ohio St., 1.

To establish a lost instrument, deed or will, the
evidence must be clear and satisfactory. 17 Cyc.,
778*f*.

"Where parol evidence is relied on to prove a
deed alleged to have been lost, such evidence must
clearly and satisfactorily show the existence and
execution of the supposed deed, and so much of its
contents as will enable the court to determine the
character of the instrument." *Gillmore et al.* v.
*Fitzgerald,* 26 Ohio St., 171. The same strictness
as to proof would obtain where it is attempted to
establish the contents of a lost or destroyed record.

The testimony of said James F. Lingafelter as to

the contents and conditions of the will of Steven
Gill, deceased, contained in the record, commenc-
ing on page 173 and ending with page 203, needs no
comment other than the criticism of Judge Cox, of
the United States court, in the case of *Mack* v.
*Spencer Optical Mfg. Co.*, 52 Fed. Rep., 819 and
820, where the judge asserts, concerning such a
narrative of facts from memory after so long a
period, that a witness recalling minute details of a
trivial event which occurred in his daily vocation
thirty years before would be amazing if not mirac-
ulous.

2.   If the will of Steven Gill was as Lingafelter
testified it was, how stands the case in view of the
subsequent history and facts disclosed in the
record? The will of Steven Gill, as claimed by Ling-
afelter, gave to his three daughters an estate for
life in the property in controversy, remainder to
their heirs.

March 17, 1848, Eliza M. Kidwell, one of the
daughters, and her husband conveyed her life estate
in the property in controversy to George S. Smith,
from whom defendant company claims title.
March 20, 1848, Mary Anne Cully, another
daughter, and her husband conveyed her life estate
to George S. Smith.   On the 12th day of June,
1848, in consideration of $500 to them paid by said
three daughters, said sons conveyed the fee in this
property to the three daughters by quitclaim deed.
On June 12, 1848, Anne Wadhame, the third
daughter, and her husband sold and conveyed to
Merwin Cully, husband of Mary Anne Cully, not
only the life estate of Sarah Anne Wadhame, but
also the fee simple title in one-third of the premises

for $200. July 24, 1848, Merwin Cully and Mary Anne Cully conveyed to George S. Smith, not the life estate of Mary Anne Cully in one-third of this property, but the absolute title in fee simple for $450.

Without going into further detail as to the various deeds to Smith, after he received these conveyances he erected a large and valuable building on said lot. The defendant company produced its chain of title for all of said premises, showing an unbroken line of conveyances from the president of the United States to the plaintiff in error, The Consumers' Brewing Company, and they further show an actual, open, notorious, exclusive and continuous possession under color of right in these premises since 1845, a period of sixty-seven years.

On the second Monday of January, 1845, these premises were offered for sale by the county treasurer of Licking county to pay delinquent taxes, interest and penalties and were not sold for want of bidders. On the second Monday of January, 1845, these premises were forfeited to the state of Ohio under the statute then in force governing forfeited land sales.

On the second Monday of December, 1845, these same lands were sold by the county auditor under the act of March 14, 1831, providing for the sale of lands forfeited to the state for nonpayment of taxes, being the same statute that is now in force under Section 2899 of the Revised Statutes of Ohio. The land was sold to F. H. Woodbridge, August 15, 1846, and a deed was executed by the auditor of the county to Woodbridge under said sale. September 19, 1846, said F. H. Woodbridge and wife

conveyed these premises by quitclaim deed to one William A. Boss. August 4, 1848, William A. Boss and wife conveyed said premises to said George S. Smith. November 10, 1849, said George S. Smith and wife conveyed the same premises to Michael Morath, in which deed there is this recital: "Being the same premises heretofore occupied by the said George S. Smith, on which there is a three-story stone building known as the Bazaar in said city." June 22, 1889, Michael Morath conveyed these premises to Philomena Worley. June 20, 1889, A. J. Grilley, sheriff of said county, conveyed these premises to L. P. Schaus and J. H. Hibbert. On the 17th day of July, 1897, said premises were set off and assigned in severalty to the said L. P. Schaus in partition in and by virtue of an action pending in the common pleas court in said county, in which L. P. Schaus was plaintiff and Anna Chilcote and others were defendants, being case No. 10,119 of the records of court of common pleas of said county.

At the April term of said court for the year 1897 said partition was confirmed by the court, and the clerk was ordered to have so much of said decree recorded as would show the transfer of title of said land. On December 11, 1905, L. P. Schaus and wife conveyed said premises to the Consumers' Brewing Company, a corporation, which is now the owner and holder of said premises and the plaintiff in error in this action. The foregoing citations show a complete chain of title from the state of Ohio in 1846 to The Consumers' Brewing Company, plaintiff in error, covering a period of sixty-five years.

The only attack made upon said title by the defendants in error is their contention that the tax deed to Woodbridge for the forfeiture of lands for the nonpayment of taxes was not a legal conveyance and was void and passed no title for the reason of a defective description in the tax deed or upon the duplicate for the sale of forfeited lands to the state. Under the act of March 14, 1831, in force at the time these lands were sold for taxes, as well as in Section 2899 of the Revised Statutes, when lands are forfeited to the state for nonpayment of taxes all former titles to said lands are divested and extinguished, and the effect of the tax sale was to work a forfeiture of all the prior estates of the owner, and the auditor's deed for forfeited land sold under said act of March 14, 1831, is *prima facie* evidence of title, and may be given in evidence without any preliminary evidence. The statute throws upon a person seeking to avoid this deed the burden of showing that the proceedings prior to its execution were illegal. Such a deed is not only *prima facie* evidence, but the supreme court of Ohio, in the case of *Lessee of Ward* v. *Barrows,* 2 Ohio St., 242, held:

"In favor of the acts of public officers, the law will presume all to have been rightly done, unless the circumstances of the case overturn this presumption; and consequently, as stated by the supreme court of the United States, in *Bank of the United States* v. *Dandridge,* 12 Wheaton, 70, 'acts done which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter.' "

The auditor's deed was *prima facie* evidence without any proof of the regularity of the proceedings resulting in the sale of the land. *Turney* v. *Yoeman et al.,* 14 Ohio St., 208; *Woodward* v. *Sloan,* 27 Ohio St., 592.

The effect of this rule, as before shown, is to shift the burden of proof by imposing on the party asserting the invalidity of the deed the duty of showing it to be void for want of compliance with the statute in the proceedings leading to the alleged forfeiture. As we have said, the only objection to or defect of the tax deed is that it is rendered void because the description is not good; that is, that the words "50 feet of the west half of lot 46" do not describe the property in controversy. This lot 46 is a lot 99 feet east and west and 198 feet north and south in the city of Newark, as shown by the plat offered in evidence. If this deed had described it as the "west half of lot 46" the description would be perfect, but says "50 feet *of* the west half of lot 46."

"Of" is a preposition meaning "belong to." "A description in an auditor's deed need not be of a greater certainty than any other conveyance by deed of individuals, and the same is to be literally construed to carry out the intention of the parties."

It is held in *Schlief* v. *Hart,* 29 Ohio St., 150, that "extrinsic testimony is admissible to identify land conveyed by the following description, to-wit: 'A tract or lot of land known as the east half of the southwest division of section 17,' although such testimony shows that the land so conveyed is less in quantity than the mathematical half of the division."

Without pursuing the discussion further as to the validity of the tax deed, how can the former owners have any interest in these lands forfeited to the state for nonpayment of taxes? The state owns the fee simple title to the property and can make a sale of the same under the law. To attack a title of this kind the former owner must show some irregularity that will invalidate the forfeiture. The only alleged irregularity in this deed is as to the description, and we do not think it such a defect as to invalidate the title conveyed by the auditor in his deed made August 15, 1846. Under these deeds the plaintiff in error and its predecessors in title, from whom it claimed, have been in possession for over fifty years. We think it too late to attack the validity of this conveyance, and if the conveyance is legal it passes all the title, legal and equitable, owned by the prior owners of said premises, and vests in the plaintiff in error by succession an absolute estate in fee simple; and being of this opinion, we must hold there was error in the court below in finding that the title to this property, or any part of it, is in the defendants, and for these reasons the judgment of the court below is reversed and the cause is remanded to the common pleas for new trial and further proceedings according to law.

*Judgment reversed.*

*Mr. A. A. Stasel* and *Mr. Carl Norpell,* for plaintiff in error.

*Messrs. Kibler & Kibler* and *Mr. J. R. Davies,* for defendants in error.